### UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| SURVWEST LLC, | ) | Case No. 24-15214 TBM |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| SURVWEST LLC, | ) | Adversary Proceeding No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FUNDERS APP LLC d/b/a SYMPLIFI, | ) | |
| | ) | |
| Defendant. | ) | |

### COMPLAINT FOR (A) DECLARATORY AND INJUNCTIVE RELIEF; (B) DAMAGES; AND (C) TO AVOID TRANSFERS

Plaintiff SurvWest LLC, for its Complaint for (A) Declaratory and Injunctive Relief; (B) Damages; and (C) to Avoid Transfers, states and alleges as follows:

### <u>JURISDICTION AND VENUE</u>

1.      The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b).

2.      This proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (F), (K) and (O).

3.      Venue in this district is proper under 28 U.S.C. § 1409(a).

4.      This adversary proceeding is commenced pursuant to Rule 7001(1), (2), (7) and (9) of the Federal Rules of Bankruptcy Procedure.

5.      Plaintiff consents to the entry of final orders and judgment by the Bankruptcy Court.

## PARTIES

6.     Plaintiff SurvWest LLC ("Debtor") is the debtor-in-possession in chapter 11 case no. 24-15214 TBM (the "Bankruptcy Case").

7.     Defendant Funders App LLC d/b/a Symplifi ("Symplifi") is a creditor of the Debtor.

## GENERAL ALLEGATIONS

8.     On or about April 10, 2024, Debtor and Symplifi executed a Merchant Cash Advance agreement (the "MCA Agreement"), a copy of which is attached hereto as Exhibit 1.

9.     The terms of the MCA Agreement provide that Debtor agrees to transfer a portion of its future receivables totaling $1,049,250.00 to Symplifi in exchange for an up-front payment of $750,000.00. *See id.* at 1.

10.     As security for the MCA Agreement, the Debtor granted to Symplifi the following:

a continuing, perfected and first priority lien upon and security interest in all of the Seller's rights, titles and interest in all accounts, including, but not limited to: deposit accounts, accounts receivables, other receivables, chattel paper, documents, equipment, general intangibles, instruments and inventory (collectively, the "Collateral"), whether now existing or hereinafter acquired. The Purchaser reserves the right to file a UCC-1 lien at any time during the course of this Agreement.

11.     The MCA Agreement required daily payments by the Debtor in the amount of $5,829.17. *See id.*

12.     While the MCA Agreement includes provisions indicating that Symplifi "assumes the risk" of collection and that Symplifi's ability to receive repayment "is conditional upon the performance of the [Debtor's] business," *see id.* at §§ 13(H), 13(K), Symplifi assumed no risks under the MCA Agreement relating to collection.

13.     Rather, the MCA Agreement required daily payments by the Debtor in the amount of $5,829.17 regardless of the amounts of future receivables. *See id.* at 1.

14.     In addition, the MCA Agreement included failure to pay the daily payment as an event of default, providing Symplifi the right to accelerate amounts due and call the personal guarantee of the Debtor's president Mathew Barr. *See id.* at §§ 19(A)(i), 19(B), 19(C).

15.     The MCA Agreement had a definite term of 180 days based upon the daily payment of $5,829.17, which was required until Symplifi was paid $1,049,250.00.

16.     The effective interest rate charged the Debtor under the MCA Agreement was 80%.

17.     The terms of the MCA Agreement also provided that the Debtor was in default on day 1 of the agreement because the agreement required the Debtor to represent that its future receivables were unencumbered. *See id.* at §§ 17(L), 19(A).

18.     Symplifi knew or should have known (through a cursory UCC search) when the MCA Agreement was executed that the Debtor's future receivables were encumbered by multiple liens.

19.     By inducing the Debtor to enter the MCA Agreement knowing that the Debtor was already in default of its terms, Symplifi effectively eliminated any potential risk sharing features of the Agreement: because an event of default had occurred at execution, Symplifi was immediately entitled to exercise all of the default remedies that shifted the contract risks to the Debtor and its guarantor.

20.     The reconciliation provisions in the MCA Agreement were illusory because the Debtor could only request a reconciliation if it was not in default of the agreement and, as set forth above, the Debtor was in default from day 1. *See id.* at § 10(B)(iv).

21.     The default remedies afforded Symplifi under the MCA Agreement gave Symplifi recourse in the event of a bankruptcy filing by the Debtor.

22.     Symplify has contended that it recorded a UCC Financing Statement against the Debtor on October 18, 2023 as contemplated under the MCA Agreement but there is no indication in the referenced statement that Symplifi is the secured party. *See* Exhibit 2.

23.     The MCA Agreement is governed by, among other jurisdictions, New York state law.

24.     On July 23, 2024, Symplifi sent a "UCC Lien Notice of Assignment" to Alfred Benesch & Company. *See* Exhibit 3.

25.     The notice provides, among other language, the following:

As holders of a perfected UCC with respect to the accounts receivable of [Debtor], and in accordance with the [MCA] Agreement, Simplifi [sic] hereby demands that Alfred Benesch & Company comply with this request to pay all funds processed on behalf of [Debtor] to SYMPLIFI.

If the event Alfred Benesch & Company fails or refuses to comply with the UCC Article 9's [sic] requirements, Alfred Benesch & Company may be liable to the secured parties for losses resulting from such non-compliance and may be required to pay statutory damages.

Exhibit 3.

26.     As a result of its receipt of this notice, Alfred Benesch & Company has refused to pay monies owed to the Debtor out of fear that doing so would subject it to liability to Symplifi.

27.     Symplifi sent identical notices (the "UCC Lien Notices") around the same time to numerous other customers of the Debtor.

28.     Numerous other customers have also refused to pay monies owed to the Debtor out of fear that doing so would subject them to liability to Symplifi.

29.     Thus, as a result of the UCC Lien Notices, customers of the Debtor are withholding monies due the Debtor because such customers are concerned that they will be liable to Symplifi in the event monies are paid to the Debtor.

30.     The transmission of the UCC Lien Notices is further evidence of Sympli's exercise of default remedies under the MCA Agreement that shifted all risks of non-payment to the Debtor.

31.     To secure a loan in the amount of $139,831, KeyBank, N.A. claims a perfected first priority lien on all of the Debtor's chattel paper, accounts and general intangibles pursuant to a UCC Financing Statement recorded on January 14, 2015 at Reception No. 20152004132.

32.     To secure a loan in the amount of $523,035, the United States Small Business Administration (the "SBA") claims a perfected second priority lien on all assets of the Debtor pursuant to a UCC Financing Statement recorded on May 4, 2020 at Reception No. 20202040625.

33.     To secure loans in the amount of $1,239,487 and $658,395, TBK Bank, SSB ("TBK") claims a perfected third priority lien on all assets of the Debtor pursuant to a UCC Financing Statement recorded on February 26, 2021 at Reception No. 20212018963.

34.     To secure a loan in the amount of $1,647,157, the SBA claims a perfected fourth priority lien on all assets of the Debtor pursuant to a UCC Financing Statement recorded on December 6, 2021 at Reception No. 20212119797.

35.     Together, the indebtedness secured by lenders that recorded UCC Financing Statements prior to Symplifi totals $4,216,905.

36.     The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on September 5, 2024 (the "Petition Date").

37.     On the Petition Date the value of the Debtor's assets subject to the purported lien of Symplify and the liens of KeyBank, TBK and the SBA (together, the "Senior Lenders") totaled $2,257,658.

38.     On the Petition Date, customers of the Debtor that received Symplifi's UCC Lien Notices were holding in excess of $1 million in monies owed to the Debtor.

39.     After the Petition Date, the Debtor demanded that Symplifi affirmatively withdraw its UCC Lien Notices to all customers to whom the notices were transmitted because (a) such notices violate 11 U.S.C. § 362(a); (b) any purported assignment rights are avoidable pursuant to 11 U.S.C. § 547(b) because they were perfected within 90 days of the Petition Date; and (c) such assignments are void and of no effect because Symplifi's purported interests in the Debtor's accounts are wholly unsecured as a result of senior liens on the same assets that exceed the assets' value.

40.     Symplifi refused to withdraw the notices.

## <u>FIRST CLAIM FOR RELIEF</u>
### (Declaratory and Injunctive Relief, Damages – Violation of the Automatic Stay)

41.     Debtor incorporates by this reference the allegations contained in Paragraphs 1 through 40 above as though more fully set forth in this Claim for Relief.

42.     11 U.S.C. § 362(a)(4) enjoins "any act to create, perfect, or enforce any lien against property of the estate."

43.     Symplifi's refusals to release its UCC Lien Notices constitute post-petition acts to enforce liens against property of the estate in violation of 11 U.S.C. § 362(a)(4).

44.     11 U.S.C. § 362(a)(5) enjoins "any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title."

45.     Symplifi's refusals to release its UCC Lien Notices constitute post-petition acts to enforce liens that secure claims that arose before the Petition Date in violation of 11 U.S.C. § 362(a)(5).

46.     11 U.S.C. § 362(a)(6) enjoins "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title."

47.     Symplifi's refusals to release its UCC Lien Notices constitute post-petition acts to collect, assess, or recover claims against the Debtor that arose before the Petition Date in violation of 11 U.S.C. § 362(a)(6).

48.     Debtor seeks entry of an order directing Symplifi to immediately release all pre-petition UCC Lien Notices asserted against customers of the Debtor.

49.     Symplifi's continuing violations of the automatic stay, after receiving notice from the Debtor regarding the bankruptcy filing and the Debtor's contention that Symplifi was acting in violation of the stay, is willful and deliberate.

50.     11 U.S.C. § 105(a) provides the Court "powers to award damages in situations involving non-individual debtors which are not covered by [11 U.S.C.] § 362[k]." *In re Rafter Seven Ranches L.P.*, 414 B.R. 722, 733-34 (10th Cir. BAP 2009).

51.     Debtor seeks an award of damages pursuant to 11 U.S.C. § 105(a) in an amount to be proven at trial.

WHEREFORE, Debtor respectfully requests that the Court enter judgment in its favor and against Symplifi granting the injunctive relief and damages requested herein and grant such other relief as the Court deems appropriate.

## SECOND CLAIM FOR RELIEF
**(Declaratory Relief – Validity, Priority, Extent of Lien – Fed. R. Bankr. P. 7001(2) and (9))**

52.     Debtor incorporates by this reference the allegations contained in Paragraphs 1 through 51 above as though more fully set forth in this Claim for Relief.

53.     Under Fed. R. Bankr. P. 7001(2) and (9), a party may commence an adversary proceeding to seek a declaratory judgment determining the validity, priority and extent of interests in property.

54.     Among other reasons, the MCA Agreement was a loan rather than a sale of future accounts because, among other reasons, (a) Symplifi assumed no risks of non-collection of future accounts; (b) the reconciliation provisions in the MCA Agreement were illusory; (c) the MCA Agreement had a finite term; and (d) Symplify had recourse in the event of a bankruptcy filing by the Debtor.

55.     Based upon the foregoing and other evidence to be adduced at trial, Debtor seeks a declaration that the MCA Agreement is a loan rather a sale of accounts.

56.     In addition, because the effective interest rate of the MCA Agreement was 80%, Debtor seeks a declaration that the MCA Agreement is usurious under New York law.

WHEREFORE, Debtor respectfully requests that the Court enter judgment in its favor and against Symplifi declaring (a) the MCA Agreement to be a loan rather than a true sale of accounts; (b) the MCA Agreement is usurious; and (c) granting such other relief as the Court deems appropriate.

## THIRD CLAIM FOR RELIEF
**(Declaratory Relief – Validity, Priority, Extent of Lien – Fed. R. Bankr. P. 7001(2) and (9))**

57.     Debtor incorporates by this reference the allegations contained in Paragraphs 1 through 56 above as though more fully set forth in this Claim for Relief.

58.     Under Fed. R. Bankr. P. 7001(2) and (9), a party may commence an adversary proceeding to seek a declaratory judgment determining the validity, priority and extent of interests in property.

59.     On the Petition Date the value of the Debtor's assets subject to the purported lien of Symplify and the liens of the Senior Lenders totaled $2,257,658.

60.     Together, the indebtedness secured by the Senior Lenders totals $4,216,905.

61.     Accordingly, at all times, the Debtor owned no unencumbered collateral to which Symplifi's purported liens could attach.

62.     The Debtor therefore seeks a declaration that Symplifi has no valid or enforceable lien on property of the bankruptcy estate.

WHEREFORE, Debtor respectfully requests that the Court enter judgment in its favor and against Symplifi granting the relief requested herein and such other relief as the Court deems appropriate.

### FOURTH CLAIM FOR RELIEF
**(Avoidable Transfers – 11 U.S.C. § 547(b))**

63.     Debtor incorporates by this reference the allegations contained in Paragraphs 1 through 62 above as though more fully set forth in this Claim for Relief.

64.     To the extent that Symplifi's delivery of UCC Lien Notices to customers of the Debtor created liens on accounts, the liens are avoidable pursuant to 11 U.S.C. § 547(b).

65.     The determination of whether a transfer is preferential pursuant to 11 U.S.C. § 547(b) is made as of the Petition Date.

66.     The creation of lien interests as a result of the delivery of UCC Lien Notices to customers of the Debtor were transfers of property of the Debtor as defined in 11 U.S.C. § 101(54).

67.     The creation of lien interests as a result of the delivery of UCC Lien Notices to customers of the Debtor were made to or for the benefit of Symplifi.

68.     The creation of lien interests as a result of the delivery of UCC Lien Notices to customers of the Debtor were made for or on account of an antecedent debt owed by the Debtor before such transfers were made.

69.     The Debtor was insolvent during the 90-days prior to the Petition Date.

70.     The creation of lien interests as a result of the delivery of UCC Lien Notices to customers of the Debtor were made on the dates of delivery.  The Debtor seeks avoidance of all such transfers made on or within 90 days of the Petition Date.

71.    The creation of lien interests as a result of the delivery of UCC Lien Notices to customers of the Debtor enabled Symplifi to receive more than it would receive if (a) the Debtor's case was a case under chapter 7 of the Bankruptcy Code; (b) the transfers had not been made; and (c) Symplifi received payment of the purported debt owed by the Debtor to the extent provided by the provisions of the Bankruptcy Code.

WHEREFORE, the Debtor respectfully requests that the Court enter judgment in its favor and against Symplifi, avoiding, pursuant to 11 U.S.C. § 547(b), all transfers of lien interests to Symplifi arising as a result of the delivery of UCC Lien Notices to customers of the Debtor and granting such other relief as the Court deems appropriate.

Dated this 25th day of September, 2024.

Respectfully submitted,

WADSWORTH GARBER WARNER CONRARDY, P.C.

*/s/ David V. Wadsworth*
David V. Wadsworth, #32066
2580 West Main Street, Suite 200
Littleton, Colorado 80120
303-296-1999 / 303-296-7600 FAX
dwadsworth@wgwc-law.com