Symplifi CAPITAL

# AGREEMENT TO PURCHASE FUTURE RECEIVABLES

This Agreement to Purchase Future Receivables ("Agreement"), dated 04/10/2024 between Symplifi ("Purchaser") and the seller(s) listed herein (collectively, the "Seller") (all capitalized terms shall have the meanings ascribed to them below):

| Merchant's Legal Name: SURVWEST LLC | | | |
|---|---|---|---|
| D/B/A: SURVWEST | | | |
| Type of Entity: Limited Liability Company | State of Incorporation: CO | Business Start Date: 04/01/2009 | |
| Federal Tax ID: 26-4586113 | Business Phone: 720-884-6739 | SSN: 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 | |
| Contact Name: MATTHEW JOHN BARR | Mobile: 7208846739 | Email Address: Mbarr@survwest.com | |
| Mailing Address: 6501 E BELLEVIEW AVE STE 300 | City: ENGLEWOOD | State: CO | Zip: 80111 |
| Physical Address: 6501 E BELLEVIEW AVE STE 300 | City: ENGLEWOOD | State: CO | Zip: 80111 |
| Purchase Price: $750,000.00 | Purchased Percentage: 18.84% | Purchased Amount: $1,049,250.00 | |
| Payment Frequency: daily | Initial Scheduled Remittance: $5,829.17 | Current Ownership %: 100% | |

*Accurate contact information is required to provide the Seller with important information regarding the Agreement. Concurrently with the execution of this Agreement by Seller, and as condition to the effectiveness hereof, Seller has caused the Personal Guarantee of Performance in the form attached hereto as "Exhibit B" (Exhibit B - Personal Guaranty of Performance) to be signed and delivered to PURCHASER by the following Owner(s)/Guarantor(s) of Seller.

**Furthermore, in the event the Seller and/or Guarantor are comprised of more than one entity and/or individuals, then ALL such entities and/or individuals, respectively, shall sign the Addendum to this Agreement in the form attached hereto as "Exhibit F" (Exhibit F - Multiple Entities). All such entities on Exhibit F shall be treated as additional Sellers or Guarantors and, therefore, the terms of this Agreement shall be fully enforceable against all such entities and individuals.

***WHEREAS Seller is desirous to sell to PURCHASER, and PURCHASER is desirous to purchase from Seller a Specified Percentage of the Seller's Future Receipts, but only on the terms and conditions set forth in this Agreement.

****This Agreement shall be owned and serviced by Funders App, LLC.

| Seller/s | |
|---|---|
| First Name: MATTHEW JOHN | Last Name: BARR |
| Mobile Phone: 7208846739 | Email: mbarr@survwest.com |
| Title: Owner | Signature: Matthew Barr |
| First Name: | Last Name: |
| Mobile Phone: | Email: |
| Title: | Signature: |
| **Owner/s** | |
| First Name: MATTHEW JOHN | Last Name: BARR |
| Mobile Phone: 7208846739 | Email: mbarr@survwest.com |
| Title: Owner | Signature: Matthew Barr |
| First Name: | Last Name: |
| Mobile Phone: | Email: |
| Title: | Signature: |

**EXHIBIT 1**

Owner(s)/Guarantor(s) Initials [MJB]

Symplifi CAPITAL

2

V4-P11.27.23

Owner(s)/Guarantor(s) Initials [ ]



| This Purchase Agreement of Future Receivables (the "Agreement") by and between, | |
|---|---|
| (The "Purchaser"), | Symplifi, or any affiliates, intermediaries, or assignees ("Symplifi") |
| (The "Merchant") | SURVWEST LLC |
| (The "Guarantor") | MATTHEW JOHN BARR |
| ("Effective Date") | 04/10/2024 |

WHEREAS, the purpose of this Agreement is to set forth the terms and conditions in relation to the purchase of future receivables from the Seller, and the Seller is entering into this Agreement voluntarily and has had ample opportunity to review this Agreement prior to executing it, and finally, in consideration of the mutual promises and covenants set forth herein and for other valuable consideration, the sufficiency of which is agreed to by the parties hereto, the Purchaser and the Seller (collectively, the Parties"), hereby agree as follows:

**1. BASIC TERMS AND DEFINITIONS.**

i. Applicable Fees - All initial costs and fees that Seller agrees to pay to the Purchaser as consideration. The total sum of the Applicable Fees shall be deducted from the Purchase Price prior to Seller receiving the funds from the Purchase Price (as defined below).
ii. Bank Holiday - Business Days (as defined below) in which major banks are closed for business.
iii. Business Day - Monday through Friday, except for bank holidays.
iv. Daily Receipts - The amount of Future Receipts (as defined below) received by Seller on a daily basis.
v. Effective Date - the date set forth in the preamble of this Agreement.
vi. Future Receipts - Seller's or accounts receivable or proceeds therefrom or receipts of monies for the sale of its goods and services after the Effective Date of this Agreement.
vii. Net Funding - The consideration transferred to Seller after the Applicable Fees and Origination Fees (defined below) are deducted.
viii. Obligations - The terms and conditions the Purchaser is bound to under this Agreement.
ix. Origination Fee - The agreed upon fee between the Seller and a third-party Broker, which shall be deducted from the Net Funding (as defined below).
x. Parties - Collectively, the Purchaser, Merchant, Personal Guarantor.
xi. Prior Balance - Outstanding balance on a previously executed Agreement between the Parties.
xii. Purchased Amount - The total amount of the Specified Percentage of the Future Receipts that the Seller shall be obligated to deliver and pay to the Purchaser.
xiii. Purchase Price - The total amount that the Purchaser has agreed to pay for the Purchased Amount.
xiv. Scheduled Remittances - The fixed amount that the Parties agree to be a good faith approximation of the Specified Percentage (as defined below) of the Seller's Daily or Weekly Receipts. Scheduled Remittance shall begin on 04/11/2024
and be processed daily or weekly. If a Scheduled Remittance is due on a Banking Holiday, Purchaser shall schedule an additional payment on the previous business day prior to such Banking Holiday. If the Parties agree to a weekly payment frequency, Purchaser shall have authority to adjust the weekly payment frequency to a daily payment frequency, so long as the daily Scheduled Remittances are reduced so that the aggregate amount of daily remittances is equal to the amount of the weekly Scheduled Remittances. (e.g. $500/week = $100/day).
xv. Specified Percentage: 18.84% of each and every sum from sales made by the Seller of Future Receipts.

Owner(s)/Guarantor(s) Initials [MJB]

**2. TERM.** This Agreement does not have a fixed duration and shall expire upon the date when the Purchased Amount and all other sums due to the Purchaser are paid in full ("Expiration Date").

**3. SALE OF PURCHASED FUTURE RECEIPTS.** Seller hereby irrevocably assigns, transfers, and conveys unto Purchaser all of the Seller's right, title, and interest in the Specified Percentage of the Future Receipts until the Purchased Amount shall have been delivered by Seller to Purchaser ("Purchased Future Receipts"). This sale of the Purchased Future Receipts is made without express or implied warranty to Purchaser of collectability of the Purchased Future Receipts by Purchaser and without recourse against Seller and/or Guarantor(s), except as specifically set forth in this Agreement. By virtue of this Agreement, Seller transfers to Purchaser full and complete ownership of the Purchased Future Receipts and Seller retains no legal or equitable interest therein.

**4. PAYMENT OF PURCHASE PRICE.** As good faith consideration, Purchaser agrees to pay to Seller the Purchase Price, less any Applicable Fees, Prior Balance (if applicable) and Origination Fees, upon execution of this Agreement.

**5. USE OF PURCHASE PRICE.** Seller hereby acknowledges and understands that: (i) Purchaser's ability to collect the Purchased Amount (or any portion thereof) shall be contingent upon Seller's continued operation of its business and successful generation of the Future Receipts until the Purchased Amount is delivered to Purchaser in full; and (ii) in the event of decreased efficiency or total failure of Seller's business, Purchaser's receipt of the full or any portion of the Purchased Amount may be delayed indefinitely. Based upon the forgoing, Seller agrees to use the Purchase Price exclusively for the benefit and advancement of Seller's business operations and for no other purpose.

**6. SCHEDULED REMITTANCE OF PURCHASED AMOUNTS.** The Purchased Amount shall be delivered by the Seller to the Purchaser in the amount of the Initial Scheduled Remittance on each Business Day commencing on the Effective Date. In the event a Scheduled Remittance is due on a Bank Holiday in which Purchaser's ACH processor does not process payments, Purchaser shall schedule an additional ACH payment on the Business Day immediately preceding such Bank Holiday. The Scheduled Remittance amount identified on page one of this Agreement shall be the "Initial Scheduled Remittance" and shall be fixed unless such remittance is adjusted pursuant to the reconciliation procedure stated herein.

**7. APPROVED BANK ACCOUNT AND CREDIT CARD PROCESSOR(S).** During the term of this Agreement, the Seller shall: (i) deposit all Future Receipts into one (and only one) bank account, which shall be preapproved by the Purchaser (the "Approved Bank Account"); (ii) use one (and only one) credit card processor, which shall be preapproved by the Purchaser (the "Approved Processor"); and (iii) deposit all credit card receipts into the Approved Bank Account. In the event the Approved Bank Account or Approved Processor shall become unavailable or shall cease to operate during the term of this Agreement, Seller shall arrange for another Approved Bank Account and/or Approved Processor within twenty-four (24) hours.

**8. AUTHORIZATION TO DEBIT APPROVED BANK ACCOUNT.** The Seller hereby authorizes the Purchaser to initiate electronic payments or ACH debits from the Approved Bank Account in the amount of the Scheduled Remittance on each Business Day commencing on the Effective Date until the Purchaser receives the full Purchased Amount. The Parties agree that the Seller shall provide Purchaser with all access code(s) for the Approved Bank Account.

**9. FEES ASSOCIATED WITH DEBITING APPROVED BANK ACCOUNT.** All fees, charges and expenses incurred by either Party due to rejected electronic checks, failed ACH debit attempts, overdrafts or rejections by Seller's banking institution shall be the sole responsibility of the Seller.

**10. RECONCILIATION.**

A. Seller's Right for Reconciliation. The Parties each acknowledge and agree that:



i. If at any time during the term of this Agreement Seller shall experience unforeseen decreases in Seller's Daily Receipts, the Seller shall have the right, at its sole and absolute discretion, to request a modification to their Scheduled Remittance.

ii. Such modification to Seller's Scheduled Remittance (the "Reconciliation") shall be performed by the Purchaser within five (5) Business Days following the written request by Seller for said Reconciliation.

B. Reconciliation Procedure.

i. Seller shall submit a written request for Reconciliation via email to rec@fundersapp.com with the subject line, "REQUEST FOR RECONCILIATION".

ii. This written Request for Reconciliation shall include a copy of Seller's most recent bank statement and/or credit card processing statement previously provided by Seller to Purchaser based upon which statements the amount of the Initial Scheduled Remittance set forth in Section 1 above (or the then current Adjusted Scheduled Remittance, as the case may be) was determined.

iii. The Purchaser shall have five (5) Business Days to review the Request for Reconciliation.

iv. Any Request for Reconciliation must be initiated prior to the Expiration Date and Seller must not be in default as defined by this Agreement.

C. Warranties. The Seller shall have the right and sole responsibility to request Reconciliation during the term of this Agreement as it deems proper so long as each such request is made in accordance with the terms of the Reconciliation Procedure. Nothing set forth in this Agreement shall be deemed to provide the Seller with the right to interfere with the Purchaser's right and ability to debit the Approved Bank Account while the request for Reconciliation is pending or until the Purchased Amount is collected by Purchaser in full; or modify the amount of the Scheduled Remittance for any calendar month without prior approval of all Parties.

D. Adjustment of the Initial Scheduled Remittance. Seller and Purchaser each acknowledge and agree that:

i. Seller shall have the right, at its sole and absolute discretion, but subject to the provisions of this Section, to request modification ("Adjustment") of the amount of the Initial Scheduled Remittance that Seller is obligated to deliver to Purchaser in accordance with the provisions of this Agreement. Such Adjustment shall become effective as of the date it is granted, and the new adjusted amount of the Initial Scheduled Remittance (the "Adjusted Scheduled Remittance") shall replace and supersede the amount of the Initial Scheduled Remittances set forth in Section 1 above.

ii. The Adjustment Scheduled Remittance shall be debited from the Approved Bank Account until the Purchased Amount is paid in full.

iii. One or more Adjustments agreed to by Purchaser may substantially extend the term of this Agreement.

iv. Purchaser may request a Reconciliation of Seller's receivables at any time. Within 2 days of Purchaser's request for Reconciliation, Seller must deliver its most recent bank statement and/or credit card processing statement previously provided by Seller to Purchaser based upon which statements the amount of the Initial Scheduled Remittance set forth in Section 1 above (or the then current Adjusted Scheduled Remittance, as the case may be) was determined. Purchaser may then make an Adjustment pursuant to its Reconciliation and make an Adjustment Scheduled Remittance or Purchaser may determine an Adjusted Scheduled Remittance which shall take effect immediately. Seller's refusal to deliver bank statements and/or credit card processing statements pursuant to Purchaser's Reconciliation request may be considered interference with Purchaser's rights under this Agreement and, therefore, deemed a default of this Agreement.

**11. SELLER'S RIGHT TO ACCELERATE REMITTANCE OF THE OUTSTANDING PORTION OF THE PURCHASED AMOUNT OF FUTURE RECEIPTS ("OUTSTANDING PAFR").**

A. Seller Shall Have this Right. At any time after receipt of the Purchase Price, and upon obtaining Purchaser's prior written consent to accelerate the delivery of the undelivered portion of the Purchased Amount of Future Receipts (the "Outstanding PAFR"), Seller may accelerate payment of the Outstanding PAFR so long as:

i. Seller obtains prior written consent of Purchaser to the accelerated payment of the Outstanding PAFR;
ii. The Outstanding PAFR is paid in full;
iii. Notice shall be in writing stating the exact amount due and delivery date of payment;
iv. Scheduled Remittances continue as scheduled until the Outstanding PAFR is paid to the Purchaser.

B. Written Confirmation of Delivery. Upon proper delivery of the Outstanding PAFR to Purchaser and written confirmation by Purchaser. Seller's obligations to the Purchaser shall be deemed completed and fulfilled.

**12. PURCHASER'S RIGHTS AND OBLIGATIONS UPON RECEIPT OF OUTSTANDING PAFR.**

A. Purchaser Shall. Notify the Approved Bank Account and cease Scheduled Remittances or Adjusted Scheduled Remittances payments to Purchaser's bank account within three (3) business days.

B. Purchaser Shall. If Purchaser shall receive Scheduled Remittances or Adjusted Scheduled Remittances after the Accelerated Delivery Date, Purchaser shall immediately:

i. Return to Seller the total sum of the Scheduled Remittances or Adjusted Scheduled Remittances received after the delivery of the Outstanding PAFR to Purchaser; or
ii. Apply the total sum of the Scheduled Remittances or Adjusted Scheduled Remittances received by Purchaser after the Accelerated Delivery Date toward Seller's outstanding financial obligations to Purchaser existing as of the Accelerated Delivery Date.

C. Seller Acknowledges and Agrees. The Purchaser shall have the right to apply the total sum of the Scheduled Remittances or Adjusted Scheduled Remittance received by the Purchaser after the Accelerated Delivery Date toward Seller's outstanding financial obligations between the Parties.

**13. RISK SHARING ACKNOWLEDGMENTS AND ARRANGEMENTS.** The Parties each hereby acknowledge and agree that:

A. Sale of Future Receipts. The Purchased Future Receipts represent a portion of Seller's Future Receipts.

B. This Agreement is Not a Loan. This Agreement consummates the sale of the Purchased Future Receipts at a discount, not the borrowing of funds by the Seller from Purchaser. Purchaser does not charge the Seller interest and will not collect any interest from Seller on the monies used by the Purchaser for the purchase of the Purchased Future Receipts.

C. No Fixed Duration. The period that it will take the Purchaser to collect the Purchased Amount is not fixed, is unknown to both Parties at this time, and will depend on the success of the Seller's business.

D. Calculation of the Scheduled Remittance. The amount of the Scheduled Remittance is calculated based upon the information concerning an average amount of Daily Receipts collected by the Seller's business immediately prior to the Effective Date of this Agreement, as well as representations regarding the Seller's estimated Future Receipts provided by Seller to Purchaser.

E. Future Receipts May Increase or Decrease. The amount of Seller's future Daily Receipts may increase or decrease over time.

F. Bankruptcy is Not a Default. Seller may not be in breach or in default of this Agreement if the full Purchased Amount is not remitted because Seller's business went bankrupt or otherwise ceased operations in the ordinary course of business.

i. EXCEPTION: It shall be an Event of Default if the Seller or guarantor files a voluntary petition for bankruptcy or is placed in bankruptcy or ceases its business operations due to the Seller's willful, intentional, or negligent mishandling of its business or Seller's intentional failure to comply with the obligations of this Agreement.

G. Risk to Purchaser. Purchaser agrees to purchase the Purchased Future Receipts knowing Seller's business may slow down or fail, and that Purchaser may not be paid all of the Amount Sold.

H. Representations by Seller. The Purchaser assumes the risk based exclusively upon the information provided to it by Seller and is relying on Seller's representations, warranties and covenants contained in this Agreement.

I. Valid Excuses. Purchaser hereby acknowledges and agrees that Seller may be excused from performing its obligations under this Agreement in the event Seller's business ceases its operations exclusively due to the following (collectively, the "Valid Excuses"):

i. Adverse business conditions that occurred for reasons outside of Seller's control and are not due to Seller's willful or negligent mishandling of its business or intentional conduct that hindered, delayed, or prevented Purchaser from debiting the daily or weekly payments.
ii. Loss of the premises where the business operates due to force majeure, provided that the Seller does not continue or resume business operations in another location.
iii. Seller's bankruptcy, so long as the Seller did not fraudulently, willfully or negligently refuse to disclose proper documentation to the Purchaser prior to the execution of this Agreement; or
iv. Force majeure.

J. Application to Fees. The Purchaser reserves the right to apply monies received pursuant to this Agreement first toward any fees and then toward the Purchased Amount.

K. No Unconditional Obligation. The Parties agree that the Purchase Price is paid to the Seller in consideration for the acquisition of the Purchased Future Receipts and that payment of the Purchase Price by the Purchaser is not intended to be, nor shall it be construed as a loan from the Purchaser to the Seller that requires absolute and unconditional repayment on a specified maturity date. The Purchaser's ability to receive the Purchased Amount is conditional upon the performance of the Seller's business.

L. Reduction. In the event a court shall determine that the Purchaser has charged or received interest hereunder in excess of the highest rate allowed by law, the rate of such interest received by the Purchaser shall automatically be reduced to the maximum rate permitted by applicable law and the Purchaser shall promptly refund to the Seller any excess interest remitted.

**14. APPLICABLE FEES.** The Parties acknowledge the Applicable Fees were agreed upon prior to the Seller entering into this Agreement, were subject to arms-length negotiations between the Parties and a detailed list of the Applicable Fees is disclosed in Exhibit A of this Agreement.

**15. ORIGINATION FEE.** To the extent that the Seller has agreed to a Broker Fee with a third-party broker, the Seller hereby requests and agrees that the Purchaser withhold the Broker Fee from the Purchase Price and for the Purchaser to pay the third-party broker directly.

**16. NO OTHER REDUCTIONS OF PURCHASE PRICE.** The Seller hereby agrees:

A. To pay the Applicable Fee, the Prior Balance and the Origination Fee (collectively, the "Closing Costs") in full.

B. That the Purchaser is authorized to apply a portion of the Purchase Price due to the Seller toward satisfaction of the Seller's obligation to pay the Closing Costs by deducting them from the Purchase Price prior to delivering it to the Seller.

C. That the deduction of the Closing Costs from the Purchase Price shall not be deemed a reduction of the Purchase Price.

**17. REPRESENTATIONS, WARRANTIES & COVENANTS.** The Seller represents and warrants that as of the Effective Date and during the term of this Agreement:

A. Financial Condition and Financial Information. The Seller's bank and financial statements furnished to the Purchaser, along with any future statements which may be furnished hereafter, fairly represent the financial condition of the Seller on the date the statements are issued. Prior to the execution of this Agreement, there has been no material adverse changes, financial or otherwise, in the operation or ownership of the Seller. The Seller has a continuing, affirmative obligation to advise the Purchaser of any material adverse change in its financial condition, operation or ownership and/or banking log-in credentials. The Purchaser may request the Seller's bank statements at any time until the Purchased Future Receipts are remitted to the Purchaser and the Seller shall provide such information to the Purchaser within five (5) business days. The Seller's failure to provide such information or blocking access to the Approved Bank Account is deemed a material breach of this Agreement.

B. Governmental Approvals. The Seller is in compliance and shall remain in compliance with all applicable laws and has the proper valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which its presently engaged.

C. Good Standing. The Seller is a corporation/limited liability company/limited partnership/or other type of entity ("business entity") that is in good standing and duly incorporated or otherwise organized and validly existing under the laws of its jurisdiction of incorporation or organization, and has the full power and authority necessary to carry its business as it is now being conducted. In the event the business entity is dissolved for any reason, the Seller shall advise the Purchaser within five (5) business days prior to the dissolution for any reason. This Agreement shall remain in full effect despite the dissolution of the business entity and any subsequent business entities formed by the Seller(s) may be responsible for the Purchased Future Receipts.

D. Authorization. The Seller represents has all requisite power to execute, delivery and perform this Agreement and consummate the transactions contemplated hereunder. The Seller also represents and warrants that entering into this Agreement will not result in the breach, violation or default under any other agreement or instrument by which the Seller is bound; nor are any statutes, rules, regulations, orders or other laws to which the Seller is subject to. The Seller further represents and warrants that entering into this Agreement does not require the obtaining of any consent, approval, permit or license from any governmental authority having jurisdiction over the Seller. All organization and other proceedings required to be taken by the Seller to authorize the execution, delivery and performance of this Agreement have already been taken. The Personal Guarantor signing this Agreement on behalf of the Sellers has full power and authority to bind the Seller to perform its obligations under this Agreement.

E. Accounting Records and Tax Returns. The Seller will treat the receipt of the Purchase Price and payment of the Purchased Amount in a manner evidencing sale of its future receipts in its accounting records and tax returns and further agrees that the Purchaser is entitled to audit the Seller's accounting records and tax returns upon reasonable notice in order to verify compliance. The Seller hereby waives any rights of privacy, confidentiality or taxpayer privilege in any litigation or arbitration arising out of this Agreement in which the Seller asserts that this transaction is anything other than a sale of future receipts.

F. Taxes; Workers Compensation Insurance. The Seller has paid and will continue to promptly pay, when due, all taxes, including, without limitation, income, employment, sales and use taxes imposed upon the Seller's business by law. The seller further asserts they will maintain workers compensation insurance required by applicable governmental authorities.

G. No Diversion of Future Receipts. The Seller shall not allow any event to occur that would cause a diversion of any portion of the Seller's Future Receipts from the Approved Bank Account or Approved Processor without the Purchaser's prior written permission.

H. Change of Name of Location. The Seller, any successor-in-interest of the Seller and the Guarantor shall not conduct Seller's business under any name other than those disclosed to the Approved Processor and the Purchaser. Seller shall not change or transfer ownership or change its place of business without obtaining prior written consent of the Purchaser. This Agreement shall be enforceable against any successors-in-interest of the Seller or alter ego entities.

I. Prohibited Business Transactions. The Seller shall not: transfer or sell all or substantially all of its assets without first obtaining prior written consent of the Purchaser.

J. No Closing of the Business. The Seller will not sell, dispose, transfer or otherwise convey all or substantially all of its business or assets without first:

i. obtaining the express prior written consent of the Purchaser; and

ii. upon obtaining written consent, providing the Purchaser with a copy of the executed Agreement between the Seller and the third-party. The Seller agrees that until the Purchaser shall receive the Purchased Amount in full, the Seller will not voluntarily close its business either temporarily for repairs, renovations or any other purpose; or permanently. In the event repairs or renovations are required as per legal authorities having jurisdiction over the Seller's business or such closing is necessitated by circumstances outside of the Seller's reasonable control, the Seller shall provide the Purchaser with written notice as soon as the Seller is aware.

K. No Pending Bankruptcy. As of the Effective Date, the Seller is not insolvent, has not filed, does not contemplate filing any petition for bankruptcy protection. There has been no involuntary bankruptcy petition brought or pending against the Seller. The Seller represents hat it has not consulted with a bankruptcy attorney on the issue of filing bankruptcy or some other insolvency proceeding within six months immediately preceding the Effective Date of this Agreement.

L. Unencumbered Future Receipts. The Seller has and will continue to have good, complete and marketable title to all Future Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests other than by virtue of entering into this Agreement. Seller specifically warrants and represents that it is not currently bound by the terms of any future receivables or factoring agreement which may encumber in any way the Future Receipts.

M. No Stacking. The Seller shall not enter into any third-party agreement which may encumber on the Future Receipts purchased by the Purchaser.

N. Business Purpose. The Seller is entering into this Agreement solely for business purposes and not as a consumer for personal, family or household purposes.

O. No Default Under Contracts with Third-Parties. The Seller's execution and/or performance of its obligations under this Agreement will not cause or create an event of default by the Seller under any contract in which Seller is or may be a party to.

P. Right of Access. The Seller hereby grants the Purchaser the right to enter, without prior notice, the premises of the Seller's business for the purpose of inspecting or checking the Seller's transaction processing terminals to ensure the terminals are properly programmed to submit and/or batch Seller's daily receipts to the Approved Processor and to ensure that the Seller has not violated any provisions of this Agreement. The Seller hereby grants the Purchaser access to the Seller's employees, records and all other items located at the Seller's place of business during the term of this Agreement. Seller hereby agrees to provide the Purchaser any and all information concerning the Seller's business operations, banking relationships, names and contact information of the Seller's suppliers, vendors and landlord(s) and allows the Purchaser to contact said third-parties at any time.

Q. Phone Recordings. The Parties agree that any call between the Parties and its owners, managers, employees, and agents may be recorded and/or monitored. The Seller acknowledges and agrees that the Seller may be contacted by the Purchaser or any of their authorized representatives at any time regarding the performance of the Seller's obligations pursuant to this Agreement. The Seller further acknowledges and agrees they will not claim that such communications are unsolicited or inconvenient.

R. Authorized Representative. The Parties agree and acknowledge the signatories to this Agreement are authorized to make managerial and financial decisions on behalf of the Seller with respect to this Agreement and have such knowledge,

experience and skill in financial and business matters, thus having the capability of evaluating the merits and risks of this Agreement.

S. Attorney Representation. The Sellers acknowledge and agree that they had read and fully understand the content of this Agreement; had the opportunity to consult with Seller's own counsel in connection with entering into this Agreement; and had made sufficient inquiries to determine this Agreement is fair and reasonable to the Seller.

T. No Additional Fees Charged. The Parties agree that other than the fees set forth in this agreement and any addenda thereto, if any, the Purchaser is not charging any additional fees to the Seller.

**18. PLEDGE OF SECURITY**

A. Pledge. As security for the prompt and complete payment and performance of any and all liabilities, obligations, covenants or agreements of the Seller pursuant to this Agreement (collectively, the "Obligations"), the Seller hereby pledges, assigns and hypothecates to the Purchaser (the "Pledge") and grants to the Purchaser a continuing, perfected and first priority lien upon and security interest in all of the Seller's rights, titles and interest in all accounts, including, but not limited to: deposit accounts, accounts receivables, other receivables, chattel paper, documents, equipment, general intangibles, instruments and inventory (collectively, the "Collateral"), whether now existing or hereinafter acquired. The Purchaser reserves the right to file a UCC-1 lien at any time during the course of this Agreement.

B. Termination of the Pledge. Upon the payment in full of the Obligations by the Seller, the security interest in the Collateral pursuant to this Pledge shall automatically terminate without any further act of either Party and all rights to the Collateral shall revert back to the Seller. Upon Seller's request, the Purchaser will execute, acknowledge and deliver such satisfactions, releases and termination statements, in writing.

C. Representations. The Seller hereby represents and warrants to the Purchaser that the execution, delivery and performance by the Seller of this Pledge, and the remedies in respect to the Collateral under this Pledge: i. Are duly authorized; ii. Do not require the approval of any governmental authority or any other third-party; iii. Do not and shall not violate or result in the breach of any provision of law or regulation, any order or decree of any court or other governmental authority; or iv. Do not violate, result in the breach of or constitute a default under, or conflict with any indenture, mortgage, deed of trust, agreement or any other instrument to which the Seller is a party or by which any of the Seller's assets are bound.

D. Further Assurances. Upon the request of the Purchaser, the Seller, at its sole cost and expense, shall execute and deliver all such further UCC-1s, continuation statements, assurances and assignments of the Collateral and any other documents the Purchaser may request in order to more fully effectuate the purposes of this Pledge and the assignment of the Collateral to obtain the full benefits of this Pledge and the rights and powers herein created.

**19. DEFAULTS AND REMEDIES.**

A. Events of Default. The parties agree that the following acts and conditions shall constitute an "Event of Default":

i. The Seller shall violate any term, condition or covenant in this Agreement governing the Seller's obligations of timely delivery of the Scheduled Remittances or Adjusted Scheduled Remittance to the Purchaser.
ii. The Seller shall violate any term, condition, or covenant in this Agreement in regard to any other sums due for any reason whatsoever other than as the result of the Seller's business ceasing its operations exclusively due to any of the Valid Excuses.
iii. Seller knowingly or willfully provides incorrect, false, or misleading information to the Purchaser at any time.
iv. The Seller's violation of any term, condition, or covenant in this Agreement.
v. The Seller changes its depository account or credit processor or uses multiple depository accounts or credit card processors without obtaining prior written consent of the Purchaser.

Owner(s)/Guarantor(s) Initials [ ]

vi. The Seller fails to deposit any portion of its Future Receipts into the Approved Bank Account.

vii. The Seller changes the Approved Bank Account or Approved Processor without obtaining prior written consent of the Purchaser.

viii. The Seller interferes with the Purchaser's collection of the Scheduled Remittance or Adjusted Scheduled Remittance, including, but not limited to the Seller interfering with ACH Payments by, among other things, placing a stop payment on the Approved Bank Account.

ix. Seller fails to remit multiple scheduled remittances.

x. The Seller takes on additional financing (known as "Stacking") at any time after the Effective Date and prior to the final payment pursuant to this Agreement.

xi. The Guaranty shall for any reason cease to be in full force and effect.

xii. Seller notifies Purchaser that it is unilaterally terminating the Agreement or Seller notifies Purchaser of Seller's intent to breach the Agreement.

xiii. Seller transfers or sells all or substantially all of its assets without the prior written consent of Purchaser.

xiv. Seller transports, moves, interrupts, suspends, dissolves, or terminates its business without the prior written consent of Purchaser other than (a) a bankruptcy filing which shall not be an event of default subject to the exception set forth in Section 13.F(i); or (b) if Seller goes out of business in the ordinary course, which shall also not be an event of default.

xv. Seller changes its username and/or password credentials to Approved Bank Account or removes Purchaser's online access to the Approved Bank Account without giving Purchaser at least twenty-four-hour advance written notice of said change with the updated username and password.

xvi. Seller causes its account to stop allowing Purchaser to withdraw the Scheduled Remittance from the Approved Bank Account and (a) Seller does not notify Purchaser, within two business days of a valid reason for causing the account to stop clearing payments, and (b) Seller has not requested a Reconciliation as provided herein.

xvii. Seller refuses to participate in a reconciliation to adjust the Scheduled Remittances pursuant to the Reconciliation Procedure.

xviii. Seller notifies Purchaser that it is unable or unwilling to collect all or some of Seller's receivables that have been sold to Purchaser pursuant to this Agreement and Seller Refuses to provide to Purchaser a list of Seller's Account Debtors to Purchaser or interferes with Purchaser's ability to collect the Estimated Purchased Percentage from the Account Debtors.

B. Seller's Obligations Upon Default. Upon occurrence of an Event of Default due to the Seller's breach of its obligations under this Agreement, the Seller shall immediately deliver to the Purchaser the entire unpaid portion of the Purchased Amount. The Seller shall also pay to the Purchaser any reasonable expenses incurred by the Purchaser in connection with recovering the monies due to the Purchaser pursuant to this Agreement, including, without limitation, the cost of retaining collection firms and reasonable attorneys' fees which may include up to a 33% contingency fee of the amount demanded and disbursements (collectively, "Reasonable Attorneys' Fees"). The Parties agree that the Reasonable Attorneys' Fees are either Twenty-Five Percent (25%) of the undelivered portion of the Purchased Amount upon the occurrence of an Event of Default, or Twenty-Five Hundred Dollars ($2,500.00), whichever is greater. The entire sum due shall bear simple interest from the Default Date until it is paid in full, at a rate of Nine Percent (9%) per annum, with interest accruing daily.

C. Remedies. Upon the Seller's default, the Purchaser may immediately proceed to protect and enforce its rights under this Agreement by:

i. Enforcing its rights as a creditor, including, but not limited to, notifying any account debtor(s) of the Seller's of the Purchaser's security interest.

ii. Enforcing the provisions of the Personal Guarantee of Performance against the Guarantor(s) without first seeking recourse from the Seller for the full balance owed at the time of default, plus applicable fees, attorneys' fees and other costs of collection.

iii. Notifying the Seller's credit card processor of this Agreement and to direct such credit card processor to make payments directly to the Purchaser of any and all amounts received by said credit card processor on behalf of the Seller;

iv. Commencing a lawsuit, whether for specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of the Seller's obligations hereunder, or any other legal or equitable right or remedy including for compensatory or punitive damages where applicable;

v. If an Event of Default occurs and is not waived, the Purchaser will be entitled to the issuance of an injunction, restraining order, or any other equitable relief in Purchaser's favor, subject to court approval, restraining the Seller's accounts and/or receivables up to the amount due to the Purchaser as a result of the Event of Default and the Seller will be deemed to have consented to the granting of an application for the same to any court of competent jurisdiction without any prior notice to the Sellers and without the Purchaser being required to furnish a bond or other undertaking in connection with the application.

vi. In the event that the Guarantor's obligations become due hereunder and are not waived, the Purchaser will be entitled to the issuance of an injunction, restraining order, or other equitable relief in the Purchaser's favor, subject to court approval, restraining the Seller and Guarantor's accounts and/or receivables up to the amount due to the Purchaser as a result of the Event of Default, and the Seller and Guarantor, each, in their individual capacities, will be deemed to have consented to the granting of an application for the same to any court of competent jurisdiction, without any prior notice to the Seller or Guarantor and without the Purchaser being required to furnish a bond or other undertaking in connection with the application.

vii. Purchaser may debit any of Seller's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Seller's bank account or otherwise for all sums due to Purchaser.

D. Power-of-Attorney. The Seller irrevocably appoints the Purchaser and its representatives as its agents and attorneys-in-fact with the full authority to take any action or execute any instrument or document.

i. To settle all obligations due to the Purchaser from any credit card processor and/or account debtor(s) of the Seller.

ii. Upon the occurrence of an Event of Default, to perform any and all obligations of the Seller under this Agreement to protect the value of the Collateral by obtaining the required insurance.

iii. To collect monies due or to become due under or in respect of any of the Collateral.

iv. To receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with this Agreement.

v. To sign the Seller's name on any invoice, bill of lading, or assignment directing customers or account debtors (collectively, "Account Debtors") to make payment directly to the Purchaser.

vi. To file any claims or take any action or institute any proceeding which the Purchaser may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise enforce its rights with respect to the collection of the Purchased Amount.

**20. MISCELLANEOUS.**

A. Seller Deposit Agreement. The Seller shall execute an agreement with the Purchaser that shall authorize the Purchaser to arrange for electric fund transfers and/or ACH Payments of the Scheduled Remittances or Adjusted Scheduled Remittance from the Approved Bank Account. The Seller shall provide the Purchaser and/or its authorized agent with all the information, authorizations, and passwords necessary to verify the Seller's receivables, receipts and deposits in the Approved Bank

Account. The Seller shall authorize the Purchaser and/or its agent to deduct the payments to Purchaser. The authorization shall be irrevocable until such time when the Seller shall has satisfied its obligations under this Agreement.

B. Indemnification. The Seller and its Guarantor(s) jointly and severally indemnify and hold harmless to the fullest extent permitted by law the Approved Processor, any ACH processor, customer and/or Account Debtors of the Seller, their officers, directors and shareholders against any and all losses, damages, claims, liabilities and expenses incurred by the ACH processor, customer, and/or Account Debtors of the Seller resulting from claims asserted by the Purchaser for monies owed to the Purchaser from the Seller and actions taken by any ACH Processor, customer and/or Account Debtor of the Seller in reliance upon the information or instructions provided by the Purchaser.

C. No Liability. In no event shall the Purchaser be liable for any claims asserted by the Seller or its Guarantor under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is hereby knowingly and voluntarily waived by the Seller and Guarantor.

D. Modifications; Agreements. No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by both Parties.

E. Assignments. The Purchaser may assign, transfer or sell its rights or delegate its duties hereunder, either in whole or in part, without prior notice to the Seller. The Seller may not assign its rights or obligations under this Agreement without obtaining Purchaser's prior written consent. The Purchaser reserves the right to deny such consent.

F. Notices. Unless different means of delivering notices are set forth, all notices, requests, consent, demands and other communications hereunder shall be delivered via certified mail, return receipt requested, to the respective Parties at the addresses listed in the preamble of this Agreement.

G. Waiver Remedies. The Parties agree and acknowledge the Purchaser reserves any rights pursuant to this Agreement.

H. Binding Effect. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns.

I. Governing Law, Venue and Jurisdiction. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns, except that Merchant shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of Purchaser which consent may be withheld in Purchaser's sole discretion. This Agreement shall be governed by and construed in accordance with the laws of the State of New York, Connecticut, or Florida. Any suit, action or proceeding arising hereunder, or the interpretation, performance, or breach hereof, shall be, if Purchaser so elects, instituted in a state court sitting in the State of Connecticut, County of New Haven, or any state court in the State of New York or Florida without regard to conflict of law provisions (the "Acceptable Forum"). The parties agree that the Acceptable Forum shall be the sole and exclusive forum for any and all disputes arising out of or relating to this Agreement and the Parties agree that the Acceptable Forum is convenient and submit to the jurisdiction of the Acceptable Forum and waive any and all objections to jurisdiction or venue. Should a proceeding be initiated in any other forum, the parties waive any right to oppose any motion or application made by either party to transfer such proceeding to an Acceptable Forum.

**J. COMMERCIAL EX-PARTE PREJUDGMENT REMEDY WAIVER. EACH AND EVERY MERCHANT AND GUARANTOR OF THIS AGREEMENT, AND EACH OTHER PERSON OR ENTITY WHO MAY BECOME LIABLE FOR ALL OR ANY PART OF THIS OBLIGATION, HEREBY ACKNOWLEDGE THAT THE TRANSACTION OF WHICH THIS AGREEMENT IS A PART IS A COMMERCIAL TRANSACTION, AND TO THE EXTENT ALLOWED UNDER CONNECTICUT GENERAL STATUTES SECTIONS 52-278a TO 52-278m, INCLUSIVE, OR BY OTHER APPLICABLE LAW EACH AND EVERY SELLER AND GUARANTOR OF THIS AGREEMENT HEREBY WAIVE (A) ALL RIGHTS TO NOTICE AND PRIOR COURT HEARING OR COURT ORDER IN CONNECTION WITH ANY AND ALL PREJUDGMENT REMEDIES TO WHICH GFA MAY BECOME ENTITLED BY VIRTUE OF ANY DEFAULT OR PROVISION OF THIS AGREEMENT OR SECURITY AGREEMENT SECURING THIS AGREEMENTAND (B) ALL RIGHTS TO REQUEST THAT UF POST A**

**BOND, WITH OR WITHOUT SURETY, TO PROTECT SAID SELLER OR GUARANTOR AGAINST DAMAGES THAT MAY BE CAUSED BY ANY PREJUDGMENT REMEDY SOUGHT OR OBTAINED BY BUYER BY VIRTUE OF ANY DEFAULT OR PROVISION OF THIS AGREEMENT OR ANY GUARANTY AGREEMENT SECURING THIS AGREEMENT.**

**AS A CONDITION OF THIS AGREEMENT AND AS PART OF THE SAID PREJUDGMENT REMEDY WAIVER ABOVE, BUT NOT AN EXCLUSIVE REMEDY, EACH AND EVERY SELLER AND GUARANTOR OF THIS AGREEMENT, AND EACH OTHER PERSON OR ENTITY WHO MAY BECOME LIABLE FOR ALL OR ANY PART OF THIS OBLIGATION HEREBY ACKNOWLEDGE, UNDERSTAND, AGREE AND CONSENT THAT BUYER MAY ATTACH OR GARNISH ANY AND ALL OF SELLER AND GUARANTOR'S MONEY HELD IN ANY BANK ACCOUNT AT ANY BANKING INSTITUTION IF THAT BANKING INSTITUTION HAS A BRANCH OR OFFICE PHYSICALLY LOCATED IN CONNECTICUT AND/OR IS REGISTERED WITH THE SECRETARY OF STATE OR AUTHORIZED TO CONDUCT BUSINESS IN CONNECTICUT.**

***SELLER AND GUARANTOR(S) HAVE THE RIGHT TO CHALLENGE ANY PREJUDGMENT ATTACHMENT OR GARNISHMENT ISSUED PURSUANT TO THIS SECTION AS PERMITTED UNDER CONNECTICUT LAW.***

K. Survival of Representation. All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement shall continue in full force until all the obligations under this Agreement have been satisfied in full and this Agreement shall have expired.

L. Severability. In case any of the provisions of this Agreement are found to be invalid, illegal, or unenforceable in any respect, the validity, legality, and enforceability of any other provisions contained herein shall not in any way be affected or impaired. Any provision of this Agreement that may be found by a court having jurisdiction to be prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof.

M. Entire Agreement. This Agreement embodies the entire agreement between the Parties and supersedes all prior agreements and understandings relating to the subject matter hereof. Each Party hereto has had the opportunity to consult with legal counsel of their choosing regarding the terms and condition of this Agreement, before executing this Agreement.

N. Jury Trial Waiver. THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART OR THE ENFORCEMENT HEREOF. EACH PARTY HERETO ACKNOWLEDGES THAT IT MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION AND DISCUSSIONS OF THE RAMIFICATIONS OF THIS WAIVER WITH ITS ATTORNEYS.

O. Class Action Waiver. EACH PARTY HERETO WAIVES ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY, AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR IS AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (I) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTIONS; AND (II) THE PARTY WHO INITATETS OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY THROUGH THE CLASS OR REPRESENTATION ACTION.

P. Counterparts and Facsimile Signatures. This Agreement may be signed in one or more counterparts, each of which shall constitute an original and all of which, when taken together, shall constitute one and the same agreement.

Q. Attorney Review. The Parties acknowledge that they are commercial entities and/or sophisticated parties and have had the opportunity to consult with independent legal counsel regarding this Agreement. Parties further acknowledge the terms of this Agreement are not to be construed against any Party because that Party drafted the Agreement or construed in favor of any Party because that Party failed to understand the legal effect of the provisions of this Agreement.



R. Service of Process. Each Merchant and each Guarantor consent to service of process and legal notices made by First Class or Priority Mail delivered by the United States Postal Service and addressed to the address(es) set forth on the first page of this Agreement or any other address(es) provided in writing to the Purchaser by any Merchant or Guarantor, and unless applicable law or rules provide otherwise, any such service will be deemed complete upon dispatch. Each Merchant and each Guarantor agrees that it will be precluded from asserting that it did not receive service of process, or any other notice mailed to the address(es) set forth on the first page of this Agreement if it does not furnish a certified mail receipt signed by the Purchaser that the Purchaser was provided with notice of a change in the contact address(es).

S. Consent to Receive Electronic Communications. By signing below, I am providing my electronic signature expressly authorizing Seller and its affiliates and agents to contact me by e-mail, text message, or telephone (including an automatic dialing system or artificial/prerecorded voice) at the home or mobile phone number that I have provided or any telephone number where Buyer believes it may reach Seller or Guarantor. I understand that I am not required to sign or agree to this as a condition to signing this contract.

T. Right to Cancel. Seller understands that Buyer offers Seller a right to cancel this Agreement at any time within three (3) calendar days after Buyer has delivered the Net Amount Funded. Seller may exercise this right by notifying Buyer that it is canceling this Agreement and returning the Net Amount Funded to Buyer. For the Seller's right to cancel to be effective, Buyer must receive both the notice and the return of the Net Amount Funded within three (3) calendar days after the Buyer has delivered the Net Amount Funded. _

WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the Effective Date.

| **Seller/s** | |
|---|---|
| **First Name: MATTHEW JOHN** | **Last Name: BARR** |
| **Mobile Phone: 7208846739** | **Email: mbarr@survwest.com** |
| **Title: Owner** | **Signature:** Matthew Barr |
| **First Name:** | **Last Name:** |
| **Mobile Phone:** | **Email:** |
| **Title:** | **Signature:** |
| **Owner/s** | |
| **First Name: MATTHEW JOHN** | **Last Name: BARR** |
| **Mobile Phone: 7208846739** | **Email: mbarr@survwest.com** |
| **Title: Owner** | **Signature:** Matthew Barr |
| **First Name:** | **Last Name:** |
| **Mobile Phone:** | **Email:** |
| **Title:** | **Signature:** |

Symplifi CAPITAL

# EXHIBIT A – APPLICABLE FEES

1. POSSIBLE CONFLICTS. If there is any conflict or inconsistency between any of the provisions of this Addendum and any provisions of the Agreement to which this Appendix is attached, all such conflicts and inconsistencies shall follow the terms and conditions set forth in this Appendix.

2. ADDITIONAL FUNDING/"STACKING FEE". In the event the Seller or Guarantor enters into an agreement for the sale of its future receivables (otherwise known within the finance industry as "Stacking"), at any point after being funded by the Purchaser, without prior written notice by the Purchaser, the Seller agrees to pay the Purchaser a $25,000 penalty or Ten Percent (10%) of the calculated payback amount, whichever is higher. The Purchaser reserves the right to declare the account in default at any point after receiving notice of unauthorized stacking, regardless of the payments made by the Seller or Guarantor. Notwithstanding Seller's Obligations Upon Default and Purchaser's Remedies Upon Default, in the event Seller or Guarantor enters into a subsequent sale of future receivables that is deemed to be a Stacking, Purchaser may have the option to increase Seller's Initial Scheduled Remittances or Adjusted Scheduled Remittance to accelerate repayment of the Purchased Amount so that it is consistent with the terms of Seller's subsequent sale of future receivables. This provision shall be subject to the terms of this Agreement, including Seller's Right to Reconciliation.

3. ADDITIONAL FEES. The Purchaser does not permit unauthorized outside fees not previously disclosed. The fee amount for this agreement is contingent upon closing papers and will be held back from the funded amount.

4. AUTHORIZATION. The Seller hereby authorizes the Purchaser to apply a portion of the Purchase Price due to the Seller to satisfy the applicable fees as per this Agreement.

5. NO REDUCTION OF PURCHASE PRICE. The Parties hereby agree that the deduction of the applicable fees from the Purchase Price shall not be deemed a reduction to the Purchase Price.

6. APPLICABLE FEES.

A. Origination/Underwriting Fee. This fee is to cover the expenses associated with origination, underwriting and related expenses pursuant to this Agreement. If for any reason the Purchaser, in their sole capacity, decides to cancel the deal, the Parties agree that the Seller is still responsible for this fee.

B. Non-Sufficient Funds Fee. ("NSF Fee"). $35.00 for each NSF.

C. Default Fee. In the event the Seller breaches this Agreement for any reason, a default fee of the greater of $2,500 or Twenty- Five Percent (25%) of the outstanding balance shall be added. Purchaser may apply reasonable attorneys' fees and up to 33% contingency fee of the amount demanded at the time of default.

D. Blocked Account Fee. In the event the Seller places a Stop-Payment on the Purchaser's ACH or closes their bank account, a blocked account fee of $5,000 or Twenty-Five Percent (25%) of the outstanding balance shall be added.

E. Bank Change Fee. In the event the Seller requests a change in bank accounts for the ACH payments, a $50.00 bank change fee shall be added.

F. Wire Fee. In the event a Seller shall request a Fed Wire, a $50.00 wire fee shall be added.

G. ACH Program Fee. $199.00 per month for the duration of the Agreement.

H. Third-Party Intermediary Fee. In the event the Seller retains a third-party debt relief/re-negotiator entity or individual and contacts the Purchaser seeking to redirect communication regarding this Agreement, a $10,000 fee or Twenty-Five Percent (25%) of the outstanding balance shall be added. This fee shall be used to cover the additional expenses added in modifying

Owner(s)/Guarantor(s) Initials [ ]



the terms of this Agreement. Any portion of this fee that remains unused shall be returned to the Seller at the conclusion of this Agreement or related legal action.

I. UCC Fee. $195.00

J. Collection Fees and Costs. In the event the Seller or Guarantor breaches the terms of this Agreement, the Seller and/or Guarantor shall be liable for Purchaser's reasonable attorney's fees, expert witness fees, and costs of collection and/or to enforce any term in the Agreement, in addition to any other damages awarded by a court.

K. Additional Financing. The Seller agrees that if further financing from any other finance/factoring company is taken after the funding of this contract (also known as "stacking"), this will constitute an event of default of the Agreement and all balances, plus any applicable fees, become immediately due. The Seller agrees to pay $25,000 or Ten Percent (10%) of the calculated payback amount, whichever is greater, as liquidated damages and not as a penalty, if additional financing is obtained.

L. Third-Party Tax Verification Fee (TaxGuard 8821). When applicable, Seller agrees to the cost ($199) of verifying the accuracy of current and past tax filings by a third party.

| **Seller/s** | |
|---|---|
| **First Name: MATTHEW JOHN** | **Last Name: BARR** |
| **Mobile Phone: 7208846739** | **Email: mbarr@survwest.com** |
| **Title: Owner** | **Signature:** Matthew Barr |
| **First Name:** | **Last Name:** |
| **Mobile Phone:** | **Email:** |
| **Title:** | **Signature:** |
| **Owner/s** | |
| **First Name: MATTHEW JOHN** | **Last Name: BARR** |
| **Mobile Phone: 7208846739** | **Email: mbarr@survwest.com** |
| **Title: Owner** | **Signature:** Matthew Barr |
| **First Name:** | **Last Name:** |
| **Mobile Phone:** | **Email:** |
| **Title:** | **Signature:** |



# EXHIBIT B – PERSONAL GUARANTY OF PERFORMANCE

| This Personal Guaranty of Performance (the "Guaranty") by and between, | |
|---|---|
| (The "Purchaser"), | Symplifi, or any affiliates, intermediaries, or assignees ("Symplifi") |
| (The "Guarantor") | MATTHEW JOHN BARR |
| (The "Seller") | SURVWEST LLC |
| ("Effective Date") | 04/10/2024 |

*WHEREAS, pursuant to the Agreement, the Purchaser has agreed to purchase a portion of Future Receipts of the Seller.

**WHEREAS, the Guarantor is an owner, officer, director, or manager of the Seller, will directly benefit from entering into this Agreement.

***WHEREAS, the Purchaser is not willing to enter into this Agreement unless Guarantor irrevocably, absolutely and unconditionally guarantees to the Purchaser prompt and complete performance of all obligations of the Seller under the Agreement.

****NOW, THEREFORE, pursuant to the Parties desire to proceed with this Agreement and for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, Guarantor hereby agrees as follows:

**1. Guaranty of Obligations.** The Guarantor hereby irrevocably, absolutely and unconditionally guarantees to the Purchaser prompt, full, faithful and complete performance and observance of all of Seller's Obligations under the Agreement. The Guarantor unconditionally covenants to the Purchaser in the event of a default or breach at any time by the Seller, the Guarantor shall be responsible for the Obligations and pay all damages and other amounts stipulated in the Agreement with respect to non-performance of the Obligations.

**2. Guarantor's Covenants.** The liability of the Guarantor shall not be impaired, abated, deferred, diminished, modified, released, terminated or discharged, in whole or in part, or otherwise affected, by any event, condition, occurrence, circumstance, proceeding, action or failure to act, with or without notice to, or the knowledge or consent of the Guarantor, including, without limitation:

i. Any amendment, modification or extension of the Agreement or any Obligation.
ii. Any extension of time for performance, whether in whole or in part, of any Obligation given prior to or after default thereunder.
iii. Any exchange, surrender or release, in whole or in part, of any security that may be held by the Purchaser at any time under the Agreement.
iv. Any other guaranty in existence now or which may be executed by the Guarantor or any other third-party affiliated to the Seller.
v. Any waiver of or assertion or enforcement or failure or refusal to assert or enforce, in whole or in part, any Obligation, claim, cause of action, right or remedy which the Purchaser may, at any time, have under the Agreement or with respect to any guaranty or any security which may be held by the Purchaser at any time for or under this Agreement or with respect to the Seller.
vi. Any act, omission or delay by the Purchaser which may in any manner or to any extent vary the risk of the Guarantor or which would otherwise operate as a discharge the Guarantor as a matter of law.
vii. The release of any other guarantor from liability for the performance or observance of any Obligation, whether by operation of law or otherwise.
viii. The failure to give the Guarantor any notice whatsoever.
ix. Any right, power or privilege that the Purchaser may now or hereafter have against any person, entity or collateral

 Owner(s)/Guarantor(s) Initials [MJB]

in relation to this Agreement.

**3. Guarantor's Additional Covenants.** The Guarantor will not dispose, convey, sell or otherwise transfer, or call the Seller to dispose, convey, sell or otherwise transfer, any material business assets of the Seller outside of the ordinary course of the Seller's business without the prior written consent of the Purchaser, which may be withheld by the Purchaser for any reason, until receipt of the entire Purchased Amount has been remitted to the Purchaser. The Guarantor shall pay to the Purchaser, upon demand, all expenses (including, without limitation, reasonable attorneys' fees and disbursements) of, or incidental to, or relating to the enforcement or protection of the Purchaser's rights hereunder or the Purchaser's rights under this Agreement. This Guaranty is binding upon the Guarantor and the Guarantor's heirs, legal representatives, successors and assigns and shall inure to the benefit of and may be enforced by the successors and assigns of the Purchaser. If there is more than one Guarantor, the obligations of the Guarantors hereunder shall be joint and several. The obligation of the Guarantor shall be unconditional and absolute, regardless of the unenforceability of any provision of any agreement between the Seller and the Purchaser, or the existence of any defense, setoff or counterclaim, which the Seller may assert. The Purchaser is hereby authorized, without notice or demand and without affecting the liability of the Guarantor hereunder, to at any time renew or extend the Seller's obligations under this Agreement or otherwise modify, amend, or change the terms of the Agreement. Additionally, the Guarantor is hereby notified and consents that a negative credit report reflecting their credit record may be submitted to a credit-reporting agency if the Guarantor does not honor the terms of this Guaranty.

**4. Waiver; Remedies.** No failure on the part of the Purchaser to exercise, and no delay in exercising any right under this Guaranty shall constitute a waiver, nor shall any single or partial exercise of any right under this Guaranty preclude any other or further exercise any other rights. The remedies provided in this Guaranty are cumulative and not exclusive of any remedies provided by law or equity. In the event the Seller fails to perform any obligation under this Agreement, the Purchaser may enforce its rights under this Guaranty without first seeking to obtain performance for such default from the Seller or any other Guarantors.

**5. Acknowledge of Purchase.** The Guarantor acknowledges and agrees that the Purchase Price paid by the Purchaser to the Seller in exchange for the Purchased Amount of Future Receipts is a payment for an adequate consideration and is not intended to be treated as a loan or financial accommodation from the Purchaser to the Seller. The Guarantor specifically acknowledges that the Purchaser is not a lender, bank or credit card processor, and the Purchaser has not offered any loans to the Seller. The Guarantor waives any claims or defenses of usury in any action arising out of this Guaranty. The Guarantor acknowledges that the Purchase Price paid to the Seller is good and valuable consideration for the sale of the Purchased Amount.

**6. Governing Law and Jurisdiction.** This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns, except that Guarantor shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of Purchaser which consent may be withheld in Purchaser's sole discretion. This Agreement shall be governed by and construed in accordance with the laws of Connecticut or Florida. Any suit, action or proceeding arising hereunder, or the interpretation, performance, or breach hereof, shall be, if Purchaser so elects, instituted in a state court sitting in the State of Connecticut, County of New Haven or any state court in Florida, without regard to conflict of law provisions (the "Acceptable Forum"). The parties agree that the Acceptable Forum shall be the sole and exclusive forum for any and all disputes arising out of or relating to this Agreement and the Parties agree that the Acceptable Forum is convenient and submit to the jurisdiction of the Acceptable Forum and waive any and all objections to jurisdiction or venue. Should a proceeding be initiated in any other forum, the parties waive any right to oppose any motion or application made by either party to transfer such proceeding to an Acceptable Forum.

**7. Jury Waiver.** The Parties waive the right to a trial by jury in any court in any suit, action or proceeding on any matter arising in connection with or in any way related to the transactions of which this Guaranty is a part of or its enforcement, except where such waiver is prohibited by law or deemed by a court of law to be against public policy. The

Parties acknowledge that each Party makes this waiver knowingly, willingly and voluntarily and without duress, and only after extensive consideration of the ramifications of this waiver with their attorneys.

**8. Class Action Waiver.** The Parties waive any right to assert any claims against the other Party as a representative or member in any class or representative action, except where such waiver is prohibited by law or deemed by a court of law to be against public policy to the extent either Party is permitted by law or court of law to proceed with a class or representative action against the other. The Parties further acknowledge and agree that in the event a class action does occur:

i. The prevailing party shall not be entitled to recover attorneys' fees or costs associated with pursuing the class or representative action (not withstanding any other provision in this Agreement).

ii. the Party who initiates or participates as a member of the class will not submit a claim or otherwise participate in any recovery secured through the class or representative action.

**9. Severability.** In case any of the provisions of this Guaranty are found to be invalid, illegal, or unenforceable in any respect, the validity, legality and enforceability of any other provisions contained herein shall not in any way be affected or impaired. Any provision of this Guaranty that may be found by a court having competent jurisdiction to be prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof.

**10. Opportunity for Attorney Review.** The Guarantor represents that they have carefully read this Guaranty and have had a reasonable opportunity to consult with their attorney. Guarantor understands the contents of this Guaranty and agrees to the terms and conditions of this Guaranty willfully and on their own accord.

**11. Counterparts and Facsimile Signatures.** This Guaranty may be signed in one or more counterparts, each of which shall constitute an original and all of which, when taken together, shall constitute one and the same agreement.

**12. Service of Process.** Each Merchant and each Guarantor consent to service of process and legal notices made by First Class or Priority Mail delivered by the United States Postal Service and addressed to the address(es) set forth on the first page of this Agreement or any other address(es) provided in writing to the Purchaser by any Merchant or Guarantor, and unless applicable law or rules provide otherwise, any such service will be deemed complete upon dispatch. Each Merchant and each Guarantor agrees that it will be precluded from asserting that it did not receive service of process or any other notice mailed to the address(es) set forth on the first page of this Agreement if it does not furnish a certified mail receipt signed by the Purchaser that the Purchaser was provided with notice of a change in the contact address(es).

**13. COMMERCIAL EX-PARTE PREJUDGMENT REMEDY WAIVER. EACH AND EVERY MERCHANT AND GUARANTOR OF THIS AGREEMENT, AND EACH OTHER PERSON OR ENTITY WHO MAY BECOME LIABLE FOR ALL OR ANY PART OF THIS OBLIGATION, HEREBY ACKNOWLEDGE THAT THE TRANSACTION OF WHICH THIS AGREEMENT IS A PART IS A COMMERCIAL TRANSACTION, AND TO THE EXTENT ALLOWED UNDER CONNECTICUT GENERAL STATUTES SECTIONS 52-278a TO 52-278m, INCLUSIVE, OR BY OTHER APPLICABLE LAW EACH AND EVERY SELLER AND GUARANTOR OF THIS AGREEMENT HEREBY WAIVE (A) ALL RIGHTS TO NOTICE AND PRIOR COURT HEARING OR COURT ORDER IN CONNECTION WITH ANY AND ALL PREJUDGMENT REMEDIES TO WHICH GFA MAY BECOME ENTITLED BY VIRTUE OF ANY DEFAULT OR PROVISION OF THIS AGREEMENT OR SECURITY AGREEMENT SECURING THIS AGREEMENTAND (B) ALL RIGHTS TO REQUEST THAT UF POST A BOND, WITH OR WITHOUT SURETY, TO PROTECT SAID SELLER OR GUARANTOR AGAINST DAMAGES THAT MAY BE CAUSED BY ANY PREJUDGMENT REMEDY SOUGHT OR OBTAINED BY BUYER BY VIRTUE OF ANY DEFAULT OR PROVISION OF THIS AGREEMENT OR ANY GUARANTY AGREEMENT SECURING THIS AGREEMENT.**

**AS A CONDITION OF THIS AGREEMENT AND AS PART OF THE SAID PREJUDGMENT REMEDY WAIVER ABOVE, BUT NOT AN EXCLUSIVE REMEDY, EACH AND EVERY SELLER AND GUARANTOR OF THIS AGREEMENT, AND EACH OTHER PERSON OR ENTITY WHO MAY BECOME LIABLE FOR ALL OR ANY PART OF THIS OBLIGATION HEREBY**



**ACKNOWLEDGE, UNDERSTAND, AGREE AND CONSENT THAT BUYER MAY ATTACH OR GARNISH ANY AND ALL OF SELLER AND GUARANTOR'S MONEY HELD IN ANY BANK ACCOUNT AT ANY BANKING INSTITUTION IF THAT BANKING INSTITUTION HAS A BRANCH OR OFFICE PHYSICALLY LOCATED IN CONNECTICUT AND/OR IS REGISTERED WITH THE SECRETARY OF STATE OR AUTHORIZED TO CONDUCT BUSINESS IN CONNECTICUT.**

SELLER AND GUARANTOR(S) HAVE THE RIGHT TO CHALLENGE ANY PREJUDGMENT ATTACHMENT OR GARNISHMENT ISSUED PURSUANT TO THIS SECTION AS PERMITTED UNDER CONNECTICUT LAW.

| **Seller/s** | |
|---|---|
| **First Name: MATTHEW JOHN** | **Last Name: BARR** |
| **Mobile Phone: 7208846739** | **Email: mbarr@survwest.com** |
| **Title: Owner** | **Signature:** Matthew Barr |
| **First Name:** | **Last Name:** |
| **Mobile Phone:** | **Email:** |
| **Title:** | **Signature:** |
| **Owner/s** | |
| **First Name: MATTHEW JOHN** | **Last Name: BARR** |
| **Mobile Phone: 7208846739** | **Email: mbarr@survwest.com** |
| **Title: Owner** | **Signature:** Matthew Barr |
| **First Name:** | **Last Name:** |
| **Mobile Phone:** | **Email:** |
| **Title:** | **Signature:** |

Owner(s)/Guarantor(s) Initials [MB]

Symplifi CAPITAL

# EXHIBIT C – ACH AUTHORIZATION

| This ACH Authorization Addendum (the "ACH") by and between, | |
|---|---|
| (The "Purchaser"), | Symplifi, or any affiliates, intermediaries, or assignees ("Symplifi") |
| (The "Merchant") | SURVWEST LLC |
| (The "Guarantor") | MATTHEW JOHN BARR |
| ("Effective Date") | 04/10/2024 |

**1. BANK ACCOUNT ACCESS.** Prior to entering into this Agreement, as part of the underwriting process, Purchaser will require access to the Merchant's bank accounts via online bank access. Once the Agreement is executed, Purchaser requires daily viewing access to the Merchant's bank account(s) to confirm the appropriate processing of the Scheduled Remittances. This information is strictly confidential.

**2. BANK LOGIN AUTHORIZATION.** Upon execution of the ACH, the Merchant and Guarantor(s) understand that they are authorizing Purchaser and its agents unlimited "view only" access into any and all bank accounts, credit unions or financial institutions linked directly or indirectly to the businesses or entities listed as parties of this Agreement for the duration of the Agreement. Access is limited to viewing accounts and does not permit Purchaser to make any changes other than saving electronic transactional history. If at any time the Merchant or Guarantor changes their account credentials, they are required to provide Purchaser updated credentials. Refusal to provide access to accounts shall be deemed a default of this Agreement.

**3. ACCOUNT HOLDER INFORMATION.**

| Account Holder Information | |
|---|---|
| Account Holder Name: | SURVWEST LLC |
| Account Holder DBA: | SURVWEST |
| Account Holder Business Address: | 6501 E BELLEVIEW AVE STE 300, ENGLEWOOD, CO 80111 |

**4. ACCOUNT HOLDER'S BANK INFORMATION.** If there are multiple bank accounts, please provide the following information for each bank account on a separate page and annex hereto.

| Account Holder's Bank Information | |
|---|---|
| Account Holder Bank Name(s): | TBK BANK SSB |
| Bank Portal Website: | www.tbkbank.com |
| Bank Account Number: | 4922631 |
| Bank Routing Number: | 111909579 |
| Bank Account Username: | MBARR |
| Bank Account Password: | JavinDylan#1 |
| Security Question / Answer 1: | N/A passcode sent to my email |
| Security Question / Answer 2: | N/A passcode sent to my email |

**5. ACCOUNT HOLDER INFORMATION.**

| Transaction Information | |
|---|---|
| Amount of Transaction: | $5,829.17 |
| Effective Date: | 04/10/2024 |

Owner(s)/Guarantor(s) Initials [MJB]

Symplifi CAPITAL

| Rate of Collection: | Daily |
|---|---|

**6. COMPLETE ACH AUTHORIZATION.** As per the ACH, the undersigned hereby authorizes Purchaser to electronically draft via the Automated Clearing House system the amounts indicated above from the account identified above. This authority will continue until withdraw in writing by the undersigned account holder. The undersigned hereby certifies that they are duly authorized to execute this form on behalf of the above listed account holder. The Merchant acknowledges they are responsible for $35 rejection fee if items are returned for insufficient funds.

I, the undersigned, acknowledge and agree with these items, which are described in detail within the pages of this ACH. AUTHORIZED ACCOUNT HOLDER (MERCHANT)

| **Seller/s** | |
|---|---|
| **First Name: MATTHEW JOHN** | **Last Name: BARR** |
| **Mobile Phone: 7208846739** | **Email: mbarr@survwest.com** |
| **Title: Owner** | **Signature:** Matthew Barr |
| **First Name:** | **Last Name:** |
| **Mobile Phone:** | **Email:** |
| **Title:** | **Signature:** |
| **Owner/s** | |
| **First Name: MATTHEW JOHN** | **Last Name: BARR** |
| **Mobile Phone: 7208846739** | **Email: mbarr@survwest.com** |
| **Title: Owner** | **Signature:** Matthew Barr |
| **First Name:** | **Last Name:** |
| **Mobile Phone:** | **Email:** |
| **Title:** | **Signature:** |

Symplifi CAPITAL

# EXHIBIT D – WAIVER OF PERSONAL SERVICE

This Addendum ("Addendum") is to be made a part of the purchase and sale of future receivables agreement (the Contract") between Symplifi ("Seller") and SURVWEST LLC ("Merchant") and MATTHEW JOHN BARR ("Guarantor") (collectively the "Parties") dated 04/10/2024.

1. **Merchant** hereby irrevocably and unconditionally waives personal service of any summons, complaint, or other process, which may be made by any other means permitted by New York law. Merchant understands and agrees that an action, lawsuit, or controversy may be taken up and considered by a court without any further notice. Merchant further agrees to waive any objection to the absence of formal service of process.
2. **Guarantor** hereby irrevocably and unconditionally waives personal service of any summons, complaint, or other process, which may be made by any other means permitted by New York law. Guarantor understands and agrees that an action, lawsuit, or controversy may be taken up and considered by a court withot-ut any further notice. Guarantor further agrees to waive any objection to the absence of formal service of process.
3. **MERCHANT** HEREBY AGREES TO ACCEPT SERVICE OF ANY SUMMONS, COMPLAINT, OR OTHER PROCESS BY ELECTRONIC MAIL ("EMAIL") OR BY UNITED STATES POSTAL SERVICE ("USPS") AT THE ADDRESSES LISTED BELOW OR BY ANY OTHER MEANS PERMITTED BY NEW YORK LAW.
4. **GUARANTOR** HEREBY AGREES TO ACCEPT SERVICE OF ANY SUMMONS, COMPLAINT, OR OTHER PROCESS BY ELECTRONIC MAIL ("EMAIL") OR BY UNITED STATES POSTAL SERVICE ("USPS") AT THE ADDRESSES LISTED BELOW OR BY ANY OTHER MEANS PERMITTED BY NEW YORK LAW.
5. Service shall be effective upon sending the electronic mail or depositing the summons and complaint in a USPS mailbox. Merchants' or Guarantors' email address or physical address provided shall be presumed to be valid and current unless Merchants or Guarantors provide a new email or physical address for service of process.
6. Merchant or Guarantor shall notify Purchaser of any changes to its physical address or email address for service. Unless Seller is notified of a change in address, all addresses shall be presumed to be accurate.
7. This Addendum shall supersede any inconsistent notice requirements in the Contract with respect to service of process.
8. Any parties, including additional guarantors shall agree to waive service of process and accept service at the email address provided or last known address.

| Seller/s | |
|---|---|
| First Name: MATTHEW JOHN | Last Name: BARR |
| Mobile Phone: 7208846739 | Email: mbarr@survwest.com |
| Title: Owner | Signature: Matthew Barr |
| First Name: | Last Name: |
| Mobile Phone: | Email: |
| Title: | Signature: |
| **Owner/s** | |
| First Name: MATTHEW JOHN | Last Name: BARR |
| Mobile Phone: 7208846739 | Email: mbarr@survwest.com |
| Title: Owner | Signature: Matthew Barr |
| First Name: | Last Name: |
| Mobile Phone: | Email: |
| Title: | Signature: |



## EXHIBIT E – REFERENCE FORM

| Contact Information | |
|---|---|
| Guarantor Name: | Mathew Barr |
| Phone Number: | 720.884.6739 |
| Email: | mathewbarr@gmail.com |
| **Personal Reference 1** | |
| Name: | Dylan Barr |
| Phone Number: | 720.383.0239 |
| **Personal Reference 2** | |
| Name: | Andrew Malokoski |
| Phone Number: | 303.902.8209 |
| **Business Reference 1** | |
| Company Name: | Vectors, Inc |
| Contact Name: | Matt Nawrocki |
| Business Phone: | 303.517.2022 |
| **Business Reference 2** | |
| Company Name: | Hixon Manufacturing |
| Contact Name: | Ken Perry |
| Business Phone: | 720.272.3976 |
| **Landlord Contact** | |
| Company Name: | RMR |
| Contact Name: | Tracy Rhett |
| Business Phone: | 720.405.6120 |
| **Emergency Contact** | |
| Name: | Pamela Barr |
| Relationship: | Spouse |
| Phone Number: | 303.913.7159 |
| Email: | texasbarrs@aol.com |

| Seller/s | |
|---|---|
| First Name: MATTHEW JOHN | Last Name: BARR |
| Mobile Phone: 7208846739 | Email: mbarr@survwest.com |
| Title: Owner | Signature: Matthew Barr |
| First Name: | Last Name: |
| Mobile Phone: | Email: |
| Title: | Signature: |
| **Owner/s** | |
| First Name: MATTHEW JOHN | Last Name: BARR |
| Mobile Phone: 7208846739 | Email: mbarr@survwest.com |
| Title: Owner | Signature: Matthew Barr |
| First Name: | Last Name: |
| Mobile Phone: | Email: |
| Title: | Signature: |

Owner(s)/Guarantor(s) Initials [MJB]

# EXHIBIT F – MULTIPLE ENTITY ADDENDUM

| This Multiple Entity Addendum (the "Multi Entity") by and between, | |
|---|---|
| (The "Purchaser"), | Symplifi, or any affiliates, intermediaries, or assignees ("Symplifi") |
| (The "Merchant") | SURVWEST LLC |
| (The "Guarantor") | MATTHEW JOHN BARR |
| Effective Date | 04/10/2024 |
| Add. Entity ("Seller/Guarantor") | MATTHEW JOHN BARR |

| Seller/s | |
|---|---|
| First Name: MATTHEW JOHN | Last Name: BARR |
| Mobile Phone: 7208846739 | Email: mbarr@survwest.com |
| Title: Owner | Signature: Matthew Barr |
| First Name: | Last Name: |
| Mobile Phone: | Email: |
| Title: | Signature: |
| **Owner/s** | |
| First Name: MATTHEW JOHN | Last Name: BARR |
| Mobile Phone: 7208846739 | Email: mbarr@survwest.com |
| Title: Owner | Signature: Matthew Barr |
| First Name: | Last Name: |
| Mobile Phone: | Email: |
| Title: | Signature: |

# EXHIBIT G – BALANCE TRANSFER ADDENDUM

| This Balance Transfer Addendum (the "Balance Transfer") by and between, | |
|---|---|
| (The "Purchaser"), | Symplifi, or any affiliates, intermediaries, or assignees ("Symplifi") |
| (The "Merchant") | SURVWEST LLC |
| (The "Guarantor") | MATTHEW JOHN BARR |
| Effective Date | 04/10/2024 |

**1. BALANCE TRANSFER DETAILS.**

A. Authorization. I, Merchant, on behalf of Business, hereby authorize Symplifi to debit the remaining RTR balance which is currently due and owing to Symplifi pursuant to the previous secured merchant agreement, entered into by and between Symplifi and business.

B. Acknowledgement. I, Merchant, acknowledge that as a result of the above-referenced debit, the amount paid to business by Symplifi pursuant to the new secured agreement will be reduced by the amount of the remaining RTR. I, Merchant, on behalf of Business, hereby authorize Symplifi to debit the remaining RTR balance which is currently due and owing to Symplifi pursuant to the previous secured merchant agreement, entered into by and between Symplifi and business.

| Balance Transfer Details | |
|---|---|
| Date of new secured agreement: | 04/10/2024 |
| Date of previous secured agreement: | |
| Remaining RTR balance: | |

| Seller/s | |
|---|---|
| First Name: MATTHEW JOHN | Last Name: BARR |
| Mobile Phone: 7208846739 | Email: mbarr@survwest.com |
| Title: Owner | Signature: Matthew Barr |
| First Name: | Last Name: |
| Mobile Phone: | Email: |
| Title: | Signature: |
| **Owner/s** | |
| First Name: MATTHEW JOHN | Last Name: BARR |
| Mobile Phone: 7208846739 | Email: mbarr@survwest.com |
| Title: Owner | Signature: Matthew Barr |
| First Name: | Last Name: |
| Mobile Phone: | Email: |
| Title: | Signature: |

# EXHIBIT H – PREPAYMENT ADDENDUM

| This Prepayment Addendum (the "Prepay Addendum") by and between, | |
|---|---|
| (The "Purchaser"), | Symplifi, or any affiliates, intermediaries, or assignees ("Symplifi") |
| (The "Merchant") | SURVWEST LLC |

The following prepayment addendum will be granted upon early repayment:

This contract pertains to the sale of receivable for a total amount of $1,049,250.00 and is dated 04/10/2024.

| **Seller/s** | |
|---|---|
| **First Name: MATTHEW JOHN** | **Last Name: BARR** |
| **Mobile Phone: 7208846739** | **Email: mbarr@survwest.com** |
| **Title: Owner** | **Signature:** Matthew Barr |
| **First Name:** | **Last Name:** |
| **Mobile Phone:** | **Email:** |
| **Title:** | **Signature:** |
| **Owner/s** | |
| **First Name: MATTHEW JOHN** | **Last Name: BARR** |
| **Mobile Phone: 7208846739** | **Email: mbarr@survwest.com** |
| **Title: Owner** | **Signature:** Matthew Barr |
| **First Name:** | **Last Name:** |
| **Mobile Phone:** | **Email:** |
| **Title:** | **Signature:** |

# EXHIBIT I – WEEKLY ADVANCE SCHEDULE

| Merchant's Legal Name | SURVWEST LLC |
|---|---|
| D/B/A | SURVWEST |
| Seller # 1 (Name) | MATTHEW JOHN BARR |
| Seller # 1 (Title) | Owner |
| Seller # 2 (Name) | |
| Seller # 2 (Title) | |
| Contract Date | 04/10/2024 |

| Disbursement | Scheduled Amt. |
|---|---|
| Total | $750,000.00 |

THE TERMS OF THIS ADDENDUM ARE HEREBY INCORPORATED IN AND MADE A PART OF THE MERCHANT'S FUTURE RECEIVABLES SALE AND PURCHASE AGREEMENT IDENTIFIED ABOVE.

| Seller/s | |
|---|---|
| First Name: MATTHEW JOHN | Last Name: BARR |
| Mobile Phone: 7208846739 | Email: mbarr@survwest.com |
| Title: Owner | Signature: Matthew Barr |
| First Name: | Last Name: |
| Mobile Phone: | Email: |
| Title: | Signature: |
| **Owner/s** | |
| First Name: MATTHEW JOHN | Last Name: BARR |
| Mobile Phone: 7208846739 | Email: mbarr@survwest.com |
| Title: Owner | Signature: Matthew Barr |
| First Name: | Last Name: |
| Mobile Phone: | Email: |
| Title: | Signature: |